UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **KIMMIE LANGLEY,**<br>**Plaintiff,**<br><br>**v.**<br><br>**ENHANCED RECOVERY CORPORATION, AT&T and DOES 1-10 inclusive,**<br><br>**Defendant.** | **COMPLAINT**<br><br>**1:17-CV-4520-CAP-JSA** |

## AMENDED COMPLAINT

1. "Robocalls" are the #1 consumer complaint in America today.

2. In 2016, there were almost 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—3,857,627 to be exact.[1] In 2015 and 2014, the robocall complaints reached 2,636,477 and 1,949,603, respectively.[2] It is important to recognize

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data- book-fiscal-year-2016/dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government- Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against*

these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

4. Plaintiff, KIMMIE LANGLEY, alleges Defendant, ENHANCED RECOVERY CORPORATION, robocalled her more than 250 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C.§ 227 *et seq.* ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")

5. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast

---

*Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do- not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

7. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for

incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

10. The alleged violations described in the Complaint while Plaintiff was in FULTON County, Georgia.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Georgia, residing in FULTON County, Georgia.

12. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13. Defendant ERC is a corporation with its principal place of business in Florida, and conducts business in the state of Georgia.

14. Defendant AT&T is a corporation with its principal place of business in Texas and conducts business in the state of Georgia.

15. Plaintiff is the regular user and carrier of the cellular telephone number at issue, 404-522-1063 and potentially other numbers of Plaintiff.

16. Plaintiff was the "called party" during each phone call subject to this lawsuit.

17. Defendant was attempting to collect an old AT&T bill.

18. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19. On or about, January 1st, 2014 Plaintiff received a telephone call to her aforementioned cellular telephone number from Defendant seeking to recover a debt from the Plaintiff.

20. Immediately upon receipt of the calls, after January 1st, 2014 Plaintiff answered a call from Defendant and explained that she felt harassed by all of the calls, and demanded that Defendant stop calling her aforementioned cellular telephone number.

21. In or about, January 1st. 2014 during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

22. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

23. Defendant made at least one call to 404-522-1063.

24. Defendant made at least one call to 404-522-1063 using an "automatic telephone dialing system" (ATDS).

25. Defendant made at least ten (10) calls to 404-522-1063.

26. Defendant made at least ten (10) calls to 404-522-1063 using an ATDS.

27. Defendant made at least one hundred (100) calls to 404-522-1063.

28. Defendant made at least one hundred (100) calls 404-522-1063 using an ATDS.

29. Defendant made at least two hundred (200) calls to 404-522-1063.

30. Defendant made at least two hundred (200) calls to 404-522-1063 using an ATDS.

31. Each call the Defendant made to 404-522-1063 in the last four years was made using an ATDS.

32. Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

33. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

34. Furthermore, many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

35. Plaintiff repeatedly requested the Defendant to stop calling her cell phone, however, the Defendant continued to make calls.

36. Plaintiff asked Defendant to take her name off the list of people to call.

37. Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

38. Defendant has recorded at least one conversation with the Plaintiff

39. Defendant has recorded numerous conversations with the Plaintiff.

40. Defendant has made approximately 250 calls to Plaintiff's aforementioned cellular telephone number from in or about until today, which will be established exactly once Defendant turns over their dialer records.

41. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

42. Defendant has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

43. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

44. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

45. Defendant's phone calls harmed Plaintiff by wasting her time.

46. Moreover, "wireless customers [like Plaintiff] are charged for incoming

calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

47. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

48. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

49. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

50. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

51. Defendant never had the Plaintiff's express consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

52. None of Defendant's telephone calls placed to Plaintiff were for

"emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

53. Defendant violated the TCPA with respect to the Plaintiff.

54. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I

**(Violation of the TCPA)**

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to being called by them using an ATDS or pre-recorded voice.

57. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded voice.

58. Defendant, ENHANCED RECOVERY CORPORATION, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

59. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

60. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, ENHANCED RECOVERY CORPORATION, from violating the TCPA in the future.

## COUNT II

### (Violation of the FDCPA)

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. Defendant willfully violated the FDCPA with respect to the Plaintiff each time they called the Plaintiff after revoking consent to being called by them using an ATDS or pre- recorded voice.

63. Defendant knowingly violated the FDCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to being called by them using an ATDS or pre-recorded voice.

64. Defendant, ENHANCED RECOVERY CORPORATION, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without

Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

65. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under 15 U.S.C. § 1692 *et seq.*, is entitled to damages for such violation of the FDCPA.

## COUNT III

### BAD FAITH ATTORNEY FEES

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. Defendants willingly, knowingly, and intentionally violated the TCPA in making autodialed telephone calls to Plaintiff's cellular telephone number(s) without prior express consent.

68. "Every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Tyler v. Lincoln*, 272 Ga. 118, 527 S.E.2d 180 (Ga. 2000).

69. "There is no requirement that a viable state law claim exist in order for the jury to award litigation expenses pursuant to OCGA § 13-6-11. Rather, 'OCGA § 13-6-11 constitutes a vehicle for the collection of attorney fees' even when only a federal law claim for damages is submitted to the finder of fact." *Fulton County v. Legacy Inv. Group, LLC*, 296 Ga.App. 822, 827 (2009).

70. Defendants have acted in bad faith, been stubbornly litigious or caused the Plaintiff unnecessary trouble and expense, and as such, Plaintiff is entitled to an award of litigation expenses, including a reasonable attorneys' fee, pursuant to O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B);

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3);

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

- any other such relief the court may deem just and proper.

Respectfully submitted,

**JOSEPH P. MCCLELLAND, LLC**

By: **s/Joseph P. McClelland**

>Joseph P. McClelland, Esq.
>Attorney I.D.#483407
>Post Office Box 100
>Jackson, Georgia 30233
>Telephone:  (770) 775-0938
>Facsimile: (770) 775-0938
>joseph@jacksonlaws.com
>**Attorney for Plaintiff**

## CERTIFICATION OF FONT

I hereby certify that the foregoing document has been prepared in 14-point Times New Roman font and complies with LR 5.1(B), N.D. Ga.